UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MAURICIO BERNAL,

Plaintiff,

v.

COUNTY OF SAN DIEGO; KELLY MARTINEZ; and DOES 1–100,

Defendants.

Case No.:  24-CV-1668 W (DEB)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [DOC. 13].**

Defendants, the County of San Diego and Kelly Martinez, move to dismiss Plaintiff's, Mauricio Bernal, First Amended Complaint ("FAC").  [Doc. 13].  Mr. Bernal opposes.  [Doc. 14].  The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss [Doc. 13].

I.    BACKGROUND

This lawsuit arises out of events that allegedly took place at the San Diego Central Jail.  (*FAC* at 3, ¶ 6.)  Plaintiff, Mauricio Bernal, an inmate at the jail, alleges that on July 25, 2023, he and other inmates were ordered to line up against a wall for a pat down search.  (*Id.* at 5, ¶ 20.)  Mr. Bernal alleges that he was ordered to line up against a metal

sliding door, past a visible red line demarcating a safety boundary.  (*Id.* at ¶ 21.)  He then alleges that DOES 1–5 "forcefully and aggressively" directed him to stand past the red line.  (*Id.* at 6, ¶ 22.)  Complying with orders, Mr. Bernal stood past the red line, and while waiting to be patted down, DOES 6–10 shut the sliding metal door on his right hand.  (*Id.* at ¶ 23.)  Having the door shut on his hand required Mr. Bernal to amputate his thumb and resulted in permanent injury to his index finger.  (*Id.*)  Mr. Bernal claims that DOES 1–10 ignored his cries for help as he stood in agonizing pain and shock, downplaying the incident by saying "it's not so bad."  (*Id.* at ¶ 24.)

The Complaint then asserts that after the metal door incident, DOES 1–20 refused to allow Mr. Bernal daily infirmary treatments for his finger, as well as medical documents and updates.  (*Id.* at ¶ 25.)  Further, he alleges that after the incident, DOES 1–20 harassed him about his injury by making him take out the trash with the exposed wound on his thumb, giving him a "thumbs up" as a reference to his missing amputated thumb, and using a marker to draw a severed thumb on the sliding metal door.  (*Id.* at ¶¶ 25–28.)

On September 18, 2024, Mr. Bernal filed this suit asserting federal and state law claims based on the alleged incident and subsequent harassment.  [Doc. 1].  On January 3, 2025, Mr. Bernal amended the Complaint.  (*FAC* [Doc. 9].)  Defendants then moved to dismiss the FAC.  [Doc. 13].  Mr. Bernal opposes.  [Doc. 14].

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pac. Police Depot*, 901 F.2d 696, 699 (9th Cir. 1990).

2

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706–07 (1990). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* at 711; *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).

## III.   DISCUSSION

Defendants have moved to dismiss all the claims against them and strike allegations in the FAC.  (*Mtn.* [Doc. 13].)  Each argument will be taken in turn.

///

///

**A.    CLAIMS AGAINST SHERIFF KELLY MARTINEZ**

    **1.    Rule 12(b)(6) Failure to State a Claim**

    **(i)    <u>Claims I through III (42 U.S.C. § 1983 Fourth Amendment, Eighth Amendment, and Fourteenth Amendment Due Process)</u>**

Claims I through III are brought under 42 U.S.C. § 1983 for alleged violations of Mr. Bernal's Fourth, Eighth, and Fourteenth Amendment rights.  (*FAC* at 10, ¶¶ 48–56.) Defendants move to dismiss these claims under Rule 12(b)(6), arguing they are insufficiently pled.  (*Mtn.* at 5:8–16.)  The Court agrees that the claims against Sheriff Martinez must be dismissed for failure to state a claim.  While none of the allegations suggest that Sheriff Martinez directly violated Mr. Bernal's constitutional rights, he appears to argue that she acquiesced to the alleged unconstitutional conduct of her subordinates and was deliberately indifferent to "constant complaints and notices from inmates, their families, and other County employees themselves."  (*Opp'n* at 8:12–17.) The allegations against Sheriff Martinez are as follows:

- "Defendant COUNTY, also acted through and is liable by virtue of its final policymakers, such as MARTINEZ . . . who had been delegated final policymaking authority. . . .  The COUNTY'S final policymakers, including MARTINEZ . . . were acting under color of state law."  (*FAC* at 4, ¶ 12.)
- "SHERIFF MARTINEZ had *de facto* policies or widespread, long standing deficient policies . . . ."  (*Id.* at 8, ¶ 38; 17, ¶ 89; 19, ¶ 103.)
  - The FAC later asserts those policies are: "failure to properly house individuals to ensure their safety and well being; [l]eaving individuals unattended in their cells for extended periods despite signs of medical or mental distress; failing to summon medical or mental health care when obviously necessary; [f]ailing to coordinate, share, or update internal information systems with critical medical or mental health information; [f]ailing to adequately staff the medical services division."  (*Id.* at 20, ¶ 103.)

4

- "[T]he COUNTY and SHERIFF MARTINEZ, have repeatedly failed to investigate incidents of deaths in jail, medical neglect, in custody injuries, and staff misconduct, despite the numerous complaints." (*Id.* at ¶ 40.)

- "[T]he failure of Sheriff Martinez . . . to discipline deputies after having been informed of the above-noted deficient and unconstitutional policies and practices amounts to municipal policies, ratified by those final, decisionmakers as well." (*Id.* at 12, ¶ 67; 14, ¶ 77; 17, ¶ 93; 20, ¶ 109.)

Although Mr. Bernal asserts that Sheriff Martinez received "numerous complaints," he fails to specify what those complaints were about and which "unconstitutional policies and practices" were ratified. He also asserts that the County and Sheriff Martinez have *de facto* policies that fail to ensure proper inmate housing and safety and leave them unattended in their cells when they need medical or mental health care. *See* (*FAC* at 19, ¶ 103.) However, the FAC fails to plead facts that substantiate those claims.

Additionally, the FAC fails to relate the allegations against Sheriff Martinez and the injury Mr. Bernal suffered. For example, the FAC cites the California State Auditor report, but fails to explain how that report's findings are analogous to this case. For example, the FAC cites the report's finding that there are "[d]eficiencies in medical and mental health care system[s]." (FAC at 17, ¶ 88(e).) However, the FAC does not cite what deficiencies the report specifically found and compare them to deficiencies Mr. Bernal alleges. Similarly, Mr. Bernal does not specify the circumstances of the vague references to "jail deaths" and "complaints." Without more, these conclusory allegations fail to state a claim. *See Moss*, 572 F.3d at 969 ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").

Accordingly, Mr. Bernal has failed to state a claim that Sheriff Martinez directly violated or was deliberately indifferent to his constitutional rights under the Fourth,

Eighth, and Fourteenth Amendments.  Therefore, Claims I through III against her must be dismissed.

### (ii)    Claims IV and V (*Monell Claims*)

Mr. Bernal asserts two *Monell* claims against Sheriff Martinez.  Defendants argue that *Monell* claims brought against individual defendants are improper.  (*Mtn.* at 7:20–25.)  Defendants are correct that "[a] *Monell* claim is, by definition, one brought against a public entity alone." *Hernandez v. San Bernadino County*, 2023 WL 3432206, at *5 (C.D. Cal. January 26, 2023) (*citing Monell*, 436 U.S. at 689 n. 55); *see also Spriggs v. City of San Diego*, No. 24-CV-01006-W-KSC, 2024 WL 4469218, at *7 (S.D. Cal. Oct. 9, 2024).  Therefore, the *Monell* claims against Sheriff Martinez will be dismissed without leave to amend.

### (iii)    Claims VI and VII (Tort Claims)

Mr. Bernal also asserts two tort claims against Sheriff Martinez for Intentional Infliction of Emotional Distress (IIED) and Battery.  To establish a claim for IIED in California, a plaintiff must show (1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) severe or extreme emotional distress; and (3) that the defendant was the actual and proximate causation of the emotional distress.  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009).  To establish a claim for battery in California, a plaintiff must show a nonconsensual, intentional, unlawful, and harmful contact by one person with the person of another.  *See Ashcroft v. King*, 228 Cal. App. 3d 604, 611–12 (1991).

As explained above, there are no allegations that Sheriff Martinez directly participated in any of the events alleged in the FAC.  Therefore, Mr. Bernal cannot prevail on either tort theory against Sheriff Martinez.  Put simply, there are no facts in the FAC, nor could Mr. Bernal allege any facts with leave to amend, that would show Sheriff Martinez intentionally caused Mr. Bernal extreme emotional distress or harmed him

through physical contact because there are no allegations that she participated directly in any of the allegations in the FAC.  Therefore, the tort claims must be dismissed against Sheriff Martinez without leave to amend.

### (iv)    Claim VIII (California Bane Act)

Mr. Bernal has also alleged a claim under California's Bane Act statute against Sheriff Martinez.  The Bane Act creates civil liability for anyone who "interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals or rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]."  Cal. Civ. Code § 52.1.  To successfully plead a claim under the Act, a plaintiff must show (1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) that the interference or attempted interference was by threats, intimidation, or coercion.  *Sanchez v. Cnty. of Los Angeles*, No. CV201146DSFPVCX, 2020 WL 9074714, at *9 (C.D. Cal. Apr. 28, 2020).

As explained above, Mr. Bernal has failed to state a claim that Sheriff Martinez either directly violated or was deliberately indifferent to his constitutional rights.  *Supra* Sect. A(1)(i).  Mr. Bernal also asserts that his California constitutional rights were violated, but fails to plead any facts about what those rights were or how they were violated.  Therefore, the Bane Act claims against Sheriff Martinez will be dismissed without leave to amend.

### 2.    Mr. Bernal Has Failed to Oppose Sheriff Martinez's Qualified Immunity Defense

Defendants argue that all claims against Sheriff Martinez must be dismissed without leave to amend because she is entitled to qualified immunity.  (*Mtn.* at 6:4–11.) Government officers sued under Section 1983 may be immune from civil liability under the doctrine of qualified immunity.  Qualified immunity precludes liability if the officer's

"conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of this doctrine is to balance two important interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

To determine whether an officer is entitled to qualified immunity, the court considers two independent questions: (1) whether the officer's conduct violated a statutory or constitutional right, and (2) whether that right was "clearly established" at the time of the incident. *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). Stated another way, qualified immunity bars Section 1983 suits against a government officer when "either no deprivation of rights was alleged or the law dictating that specific constitutional [or statutory] right was not yet clearly established." *Cates v. Stroud*, 976 F.3d 972, 978 (9th Cir. 2020) (citing *Pearson*, 555 U.S. at 236). Although qualified immunity is a two-step analysis, the court may analyze just the second step "when no clearly established law shows that the officers' conduct was unconstitutional." *O'Doan*, 991 F.3d at 1036. As to statutory rights, courts also look to whether "existing precedent must have placed the statutory[] question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017).

As explained above, Mr. Bernal has failed to state a claim that Sheriff Martinez either directly violated or was deliberately indifferent to his constitutional rights. *Supra* Sect. A(1)(i). Therefore, Sheriff Martinez is entitled to qualified immunity.

///

///

///

///

///

8

**B.    CLAIMS AGAINST THE COUNTY**

> **a.    <u>The Direct Claims Against the County Must be Dismissed (Claims 1 through III)</u>**

The County of San Diego, as a local government unit, may be considered a "person" and therefore, a proper defendant under 42 U.S.C. § 1983.  *See Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978); *Hammond v. County of Madera*, 859 F.2d 797, 801 (9th Cir. 1988).  However, the local government units may be held liable under Section 1983 only where the Plaintiff alleges facts to show that a constitutional deprivation was caused by the implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the County, or a "final decision maker" for the County.  *Monell*, 436 U.S. at 690; *Board of the County Commissioners v. Brown*, 520 U.S. 397, 402–04 (1997); *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995).

In other words, "respondeat superior and vicarious liability are not cognizable theories of recovery against a municipality."  *Miranda v. Clark County, Nevada*, 279 F.3d 1102, 1109–10 (9th Cir. 2002).  "Instead, a *Monell* claim exists only where the alleged constitutional deprivation was inflicted in 'execution of a government's policy or custom.'"  *Id.*  (quoting *Monell*, 436 U.S. at 694).

Mr. Bernal includes the County as a defendant on the first three claims.  However, those claims do not allege a policy, practice, or custom as required under *Monell*.  *See* (*FAC* at 10–14.)  Therefore, Claims I through III will be dismissed against the County without leave to amend.

> **b.    <u>*Monell* Claims (Claims Four and Five)</u>**

Mr. Bernal asserts two *Monell* claims against the County under 42 U.S.C. § 1983 for allegedly violating his Fourth, Eighth, and Fourteenth Amendment rights.  (*FAC* at 15–21.)  "Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."

*Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). A government entity, like the County, cannot be held vicariously liable for the action of its employees under Section 1983 unless a plaintiff can show that the entity's policy, practice, or custom was the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694.

Under *Monell*, municipalities may be liable under Section 1983 when: (1) "the acts in question were undertaken pursuant to official policy or custom." *Hopper v. City of Pasco*, 241 F.3d 1067, 1082 (9th Cir. 2001); (2) a municipality has a "policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); or (3) when a municipality's failure to train its employees "amounts to deliberate indifference to the rights of persons with whom those employees are likely to come into contact." *Lee v. City of L.A.*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *City of Canton*, 489 U.S. at 388–89) (quotation marks omitted).

### 1. **Fourth Amendment**

Mr. Bernal first asserts that the pat down was a search that violated his Fourth Amendment rights. (*FAC* at 10, ¶¶ 49–56.) Defendant argues that Mr. Bernal has failed to plead a claim that his Fourth Amendment rights were violated. (*Mtn.* at 9:2–13.) The Court agrees that Mr. Bernal has failed to plead facts showing that the search was unreasonable.

The FAC asserts "Plaintiff was strip searched in a vindictive, harassing way . . . that required [him] to stand past the clearly delineated line indicating safety . . . . Moreover, Plaintiff was pushed passed [*sic*] the clearly delineated line in an aggressive way . . . ." (*FAC* at 10, ¶ 53.) Additionally, "the unlawful, unwanted, and harmful

touching of Plaintiff by the Defendants constituting a battery and excessive force, was without lawful basis, reasonable suspicion, probable cause, or any recognized exceptions thereto, or justification or excuse . . . ." (*Id.* at 10, ¶ 52.)  These allegations are insufficient to support Mr. Bernal's claim because they are too conclusory to state a claim for relief.

Mr. Bernal alleges that the search was "vindicative," "harassing," and "unrelated to any legitimate penological interest, because [Mr. Bernal was required] to stand past the clearly delineated line indicating safety," but these are only conclusions unsupported by the factual pleadings.  (FAC at 10, ¶ 52.)  Importantly, strip-searches are not inherently unreasonable under the Fourth Amendment, and due to the unique security concerns and problems that arise in detention facilities, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547–58 (1979).

In response, Mr. Bernal cites *Shorter v. Baca*, 895 F.3d 1176 (9th Cir. 2018) for the proposition that "[t]he Ninth Circuit has held that deference to jail officials is unwarranted where search methods are unreasonable." (*Opp'n* at 10:1–2.)  However, *Shorter* held that a plaintiff *could* overcome deference to a detention search by showing "they have been subjected to search procedures that are an unnecessary, unjustified, or exaggerated response to concerns about jail safety . . . ." *Shorter*, 895 F.3d at 1191.

Here, there are no facts suggesting that the search methods Mr. Bernal asserts were unreasonable.  Mr. Bernal argues that the search was unreasonable because "a strip search that required Plaintiff to stand past the clearly delineated line indicating safety, is non other than a noncompliant and invasive search procedure." (FAC at 10, ¶ 53.)  The FAC alleges that Mr. Bernal, along with other inmates, was ordered to line up against a wall for a pat down search.  (*FAC* at 5, ¶ 20.)  While conducting the search, Mr. Bernal was told to stand past a red line, and when he did, a metal door shut on his hand, amputating his thumb.  (*Id.* at 6, ¶ 23.)  Even so, these facts as alleged do not make the

pat down search unreasonable.  Mr. Bernal does not assert that the metal door was shut on his hand intentionally, nor does he provide any facts showing that being forced to line up past the red line was an obvious danger.

In fact, Mr. Bernal alleges that just one day after the accident, inmates were ordered to stand "in the exact spot where Plaintiff's thumb was amputated, even past the clearly delineated red line."  (*FAC* at 6, ¶ 30.)  However, the FAC does not allege that any of those inmates were harmed or otherwise injured during that pat down search. Additionally, other than the line's "red" color, there are no facts alleged in the FAC that suggest the line was intended to block off safe places for detainees to stand.  Without more, the FAC fails to show that the search procedure used was unreasonable.

Mr. Bernal has failed to state a claim that his Fourth Amendment rights were violated.  *Monell* claims require a plaintiff to have suffered an underlying "constitutional violation."  *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 742 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63 (2007)) ("[T]here can be no *Monell* claim . . . without an underlying constitutional violation by the officers, the peace officer's conduct in violation of the Constitution here becomes the 'necessary logical condition' to formulating a *Monell* claim."); *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002) ("Exoneration of [the officer] of the charge of excessive force precludes municipal liability for the alleged unconstitutional use of such force.").  Therefore, Mr. Bernal's *Monell* claim based on an unlawful search fails.

### 2.    Eighth Amendment Claim

Mr. Bernal also asserts a *Monell* claim against the County for allegedly violating his Eighth Amendment rights.  Specifically, Mr. Bernal alleges that he "was physically abused and battered when he was forcefully pushed to stand in a place past the delineated red line, indicating safety . . . . [and] compelled to stand there through force and intimidation," and the County failed to "provide medical care . . . and . . . allow him to

visit the infirmary like he was supposed to and also failed to accommodate his injury and still made him take out trash with an open wound on his hand."  (*FAC* at 12, ¶¶ 62–63.)

### i.   <u>Physical Abuse Allegations</u>

Claims of excessive force arising after conviction and sentence are analyzed under the Eighth Amendment's "cruel and unusual punishment" analysis.  *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  The Supreme Court has established that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  *Id.*  In determining whether prison officials inflicted "unnecessary and wanton pain," the relevant question is whether "force was applied in a good faith effort to maintain or restore discipline or was applied maliciously and sadistically for the very purpose of causing harm."  *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

Here, Mr. Bernal has failed to allege an Eighth Amendment claim based on the allegations he was "abused and battered" when he was made to stand beyond the red line. The FAC asserts that he was "forcefully and aggressively directed . . . where [he] was to stand . . . ."  (*FAC* at 6, ¶ 22); "physically abused and battered when he was forcefully pushed to stand in a place . . . ."  (*Id.* at 12, ¶ 62); and was "pushed passed [*sic*] the clearly delineated line in an aggressive way even though he was always compliant with the deputies."  (*Id.* at 10, ¶ 53.)  However, these descriptions are too conclusory and do not adequately describe how the jail officials allegedly "abused and battered" Mr. Bernal. More facts about the physical abuse are necessary to state a claim that his Eighth Amendment rights were violated.

Additionally, the Eighth Amendment requires the plaintiff to establish that prison officials inflicted "unnecessary and wanton pain."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Mr. Bernal alleges that he was pushed aggressively and unnecessarily when ordered to stand in line, but that on its own is not sufficient to amount to an Eighth Amendment violation.  *See Hudson*, 503 U.S. at 9–10 (citing *Whitley*, 475 U.S. 312, 327

24-CV-1668 W (DEB)

(1986)) ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"). Although Mr. Bernal alleges that the events led to his thumb being amputated, he does not allege that the force used to push him past the red line caused the amputation. Without that link or other facts, the FAC fails to state a claim under the Eighth Amendment for physical abuse.

###    ii.    **Medical Care**

Mr. Bernal also asserts his Eighth Amendment rights were violated when he was denied follow up visits to the infirmary after his thumb was amputated. Under the Eighth Amendment, the government has an "obligation to provide medical care for those whom it is punishing by incarceration . . . ." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976)).

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). The Eighth Amendment's cruel and unusual punishment clause is violated when prison officials are deliberately indifferent to a prisoner's serious medical needs. *Estelle*, 429 U.S. at 105. "Medical" needs include a prisoner's "physical, dental, and mental health." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982); *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989).

To show "cruel and unusual" punishment under the Eighth Amendment, the prisoner must point to evidence in the record from which a trier of fact might reasonably conclude that the medical treatment (or lack of) placed Plaintiff at risk of "objectively, sufficiently serious" harm and that Defendants had a "sufficiently culpable state of mind" when they either provided or denied him medical care. *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal quotations omitted). Thus, there is both an objective and

subjective component to an Eighth Amendment claim. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002); *Toguchi*, 391 F.3d at 1057 (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)) ("To establish an Eighth Amendment violation, a prisoner 'must satisfy both the objective and subjective components of a two-part test.'").

Deliberate indifference is a subjective test that looks to whether an official knew and disregarded an excessive risk to inmate health and safety. *Id.* Serious medical needs are conditions that could result in further significant injury or cause unnecessary and wanton pain if left untreated. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Hallmarks of a "serious medical need" include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992).

The Court agrees with Mr. Bernal that the serious medical needs element of the Eighth Amendment test is satisfied here. Mr. Bernal claims he was injured when a sliding metal door closed on his hand. (*FAC* at 6, ¶ 23.) The injury required him to amputate his thumb and injured his index finger. (*Id.*) Additionally, Mr. Bernal alleges that he was denied follow up visits to the infirmary to accommodate his injury and was not given medical documents describing how to care for his fingers. (*Id.* at 6, ¶ 25.) Other cases have found similar injuries sufficiently serious to overcome the first prong of the Eighth Amendment analysis. *See Brison v. Wellpath, LLC*, 662 F. Supp. 3d 67, 73 (D. Mass. 2023) (hand fracture and infection qualified as sufficiently serious under the Eighth Amendment); *Thompson v. Rodriguez*, No. 3:23-CV-00515-RBM-LR, 2023 WL 7348482, at *3 (S.D. Cal. Nov. 7, 2023) (open wound fracture on right hand third index finger found to be a serious medical need); *Atkins v. Brewer*, No. 107CV01027OWWGSA(PC), 2009 WL 29873, at *4 (E.D. Cal. Jan. 5, 2009) ("Plaintiff's allegations that his finger was broken establishes that he had a serious medical need.").

24-CV-1668 W (DEB)

The Court also agrees that Mr. Bernal has adequately stated a claim that prison officials were deliberately indifferent to his serious medical needs.  Mr. Bernal alleges that government officials intentionally denied him the ability to visit the infirmary for follow up visits (*FAC* at 6, ¶ 25); was ordered to take out the trash despite an exposed wound on the hand where his thumb was amputated (*Id.* at 6, ¶ 26);  and was constantly mocked for his injury, such as other jail officials giving him a "thumbs up" and drawing his severed thumb on the metal door that injured him (*Id.* at 6, ¶¶ 27–29.)  These facts are sufficient to show that jail officials were deliberately indifferent to Mr. Bernal's medical need for follow up care on his injured hand.

However, Mr. Bernal's claim fails against the County because he has not properly pled a *Monell* claim based on this constitutional violation.  To plead a *Monell* claim, a plaintiff must assert that a municipality's practice, policy, custom, failure to train, or supervise led to a constitutional violation and that the County was deliberately indifferent to those violations.  *See Hopper*, 241 F.3d at 1082.  Here, Mr. Bernal has not alleged the County had a policy, practice, or custom in place that led to him being denied access to medical care, nor has he alleged that the County's failure to train or properly supervise led to his inability to access medical care.

The only allegation Mr. Bernal makes that the County was on notice of inadequate medical care comes from the California State Auditor report—but as explained above— those allegations fail to draw comparisons between the report's findings and the facts of this case.  *Supra* Sect. A(1)(i).  For example, Mr. Bernal points out that that the report found inconsistencies in follow-up care but does not explain what the report found as inconsistent and how those facts apply to the present case.  *See* (*FAC* at 8, ¶ 37.)  Without those facts, the report does not demonstrate that the County was deliberately indifferent to Mr. Bernal's medical needs.

Although Mr. Bernal's Eighth Amendment *Monell* claim will be dismissed, the Court will give him leave to amend on this claim.

### 3.  Fourteenth Amendment Claims

#### i.  Malicious Prosecution

The FAC appears to assert a malicious prosecution claim against the defendants but provides no facts or allegations to support that claim.  Further, the term "malicious prosecution" is only mentioned in the title of the claim, and Mr. Bernal has not opposed the motion to dismiss the claim.  *See* (*FAC* at 13.)  Therefore, to the extent that the FAC asserts a malicious prosecution claim, it is dismissed without leave to amend against all defendants.

#### ii.  Substantive Due Process

The FAC asserts a Fourteenth Amendment due process claim against the County on the grounds that the facts alleged "were shocking to the conscience, beyond the bounds of acts tolerable in a civilized society, and so egregious and outrageous that they may be fairly said to shock the contemporary conscience."  (FAC at 13, ¶ 82.) Specifically, Mr. Bernal argues that the events leading up to his finger amputation, as well as the alleged verbal harassment afterwards, violated his due process rights and caused him to suffer hardships atypical and significant to those ordinarily endured by other prisoners.  (*Id.* at 14, ¶¶ 74–76.)  Mr. Bernal appears to be alleging two different due process theories: (1) that the government endangered him (leading up to the thumb amputation) and (2) one based on the verbal harassment he endured afterwards.  (*Id.*)

As to the first theory, defendants point out that—for a Fourteenth Amendment claim based on putting a plaintiff in a position of danger—a plaintiff must show that (1) the danger was known or obvious and (2) that the state actor acted with deliberate indifference.  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006).

Although Mr. Bernal alleges that his thumb was amputated and his hand was injured, he has failed to allege a due process claim based on that incident.  The only allegation that implies there was a "known or obvious" danger was the fact that he was told to stand past a "red line."  (*FAC* at 6, ¶ 22.)  Although Mr. Bernal alleges he was

24-CV-1668 W (DEB)

injured after being told to stand past the red line, there are no facts that necessarily suggest that it was intended to prevent injuries.  Further, Mr. Bernal asserts the day after his injury, other inmates were made to stand in the same spot with no other injuries alleged.  (*Id.* at 6, ¶ 30.)  This allegation is at odds with his claim that the red line was intended as a safety boundary.

As to the claim that the alleged verbal harassment violated Mr. Bernal's due process rights, defendants correctly point out that verbal harassment is generally insufficient to amount to a constitutional deprivation under 42 U.S.C. § 1983.  *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (collecting cases).  Even if Mr. Bernal could demonstrate a constitutional violation based on the alleged verbal harassment, the *Monell* claim against the County would fail because he has not alleged any policy, custom, practice, or failure to train that led to the due process violation, as required by *Monell*.  *See Hopper*, 241 F.3d at 1082.

Although Mr. Bernal's due process claims will be dismissed, the Court will give him leave to amend.

## C.    THE COUNTY IS NOT SUBJECT TO PUNITIVE DAMAGES

Defendants move to dismiss the punitive damages claims against the County, arguing that public entities are not subject to punitive damages awards.  (*Mtn.* at 7:12–16); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."); Cal. Gov. Code § 818 ("[A] public entity is not liable for . . . other damages imposed primarily for the sake of example and by way of punishing the defendant.").  Mr. Bernal has not cited any contrary authority suggesting that the County can be liable for punitive damages. Therefore, the motion to dismiss punitive damages will be granted.

///

///

///

**D.    THE REFERENCE TO KEITH WILL BE STRUCK**

Defendants move to strike allegations pertaining to "Keith's death."  (*Mtn.* at 8:16–18.)  The FAC does not explain who "Keith" is, the details of his death, or why he is relevant to this case.  Additionally, Mr. Bernal did not explain the "Keith" references in his Opposition.  Therefore, the references to "Keith" will be struck from the FAC.  *See* Fed. R. Civ. P. 12(f).

**E.    BATTERY CLAIM**

To establish a claim for battery in California, a plaintiff must show a nonconsensual, intentional, unlawful, and harmful contact by one person with the person of another.  *See Ashcroft v. King*, 228 Cal. App. 3d 604, 611–12 (1991).  As defendants point out, a plaintiff must also prove that an officer used unreasonable force.  *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998) ("[a] [p]laintiff must prove unreasonable force as an element of the tort [battery]."); *see also Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2008) ("Indeed, Yount's common law battery cause of action, like his section 1983 claim, requires proof that Officer Shrum used unreasonable force.").

Although Mr. Bernal asserts he was aggressively and forcefully pushed into the lineup, he has failed to plead facts that render that alleged use of force unreasonable.  *See supra* at 15–16.  However, the Court will give him leave to amend to plead more facts about the pat down search and lineup.

**F.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM**

To establish a claim for IIED in California, a plaintiff must show (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional

19

distress by the defendant's outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009).

Defendants assert that the County and its employees are immune from liability for Plaintiff's emotional distress based on California law providing immunity for state tort claims arising from "[a]n injury to any prisoner." Cal. Gov. Code § 844.6(b); (*Mtn.* at 19:19–21.) Defendants also assert the County and its employees are immune from the emotional distress claims because California law also provides that "[n]either a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody." *Id.* at § 845.6; (*Mtn.* at 19:16–21.)

Mr. Bernal failed to oppose these immunity arguments, only reciting the elements of the IIED claim. (*Opp'n* at 18:10–18.) Because Mr. Bernal did not specify why those California immunity statutes do not apply in this case, the Court will dismiss the IIED claims against all defendants without leave to amend.

## G.    CALIFORNIA BANE ACT CLAIMS

Mr. Bernal also asserts a claim under the California Bane Act against all defendants. The Bane Act creates civil liability for anyone who "interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals or rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1. To successfully plead a claim under the Act, a plaintiff must show (1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) that the interference or attempted interference was by threats, intimidation, or coercion. *Sanchez v. Cnty. of Los Angeles*, No. CV201146DSFPVCX, 2020 WL 9074714, at *9 (C.D. Cal. Apr. 28, 2020).

Of course, a Bane Act claim necessarily requires a plaintiff to show their constitutional rights have been violated. Mr. Bernal asserts that his Bane Act claims

encompass violations of his Fourth Amendment, Eighth Amendment, and Fourteenth Amendment rights, as well as his Right to Happiness, Privacy, and Due Process under the California Constitution.  (*FAC* at 23, ¶ 130.)  As explained earlier in this opinion, Mr. Bernal has failed to state claims under the Fourth and Fourteenth Amendment, so the corresponding Bane Act claim fails.  *Supra* at 13–21.  Additionally, although he states his rights under the California Constitution were violated, Mr. Bernal has failed to plead how those rights were violated.  Therefore, his Bane Act claim under the California Constitution fails.  However, having found Mr. Bernal has stated a claim his Eighth Amendment rights were violated, the Bane Act claim survives.

Defendants have also moved to dismiss the Bane Act claim on the grounds that Mr. Bernal failed to allege facts that "Defendants acted with the intent necessary for a Bane Act violation."  (*Mtn.* at 22:21–26.)  However, as to his Eighth Amendment claim, Mr. Bernal has alleged facts showing the deprivation of medical care was intentional, such as "DOES 1–20 refus[ing] to allow Plaintiff to get his finger treated by the infirmary every day . . ."; "DOES 1–20 order[ing] Plaintiff to work at the Subject Jail by taking out the trash, all in conscious disregard of the open and exposed wound on Plaintiff's severed thumb . . ."; and DOES 1–20 allegedly mocking him and his amputated thumb.  (*FAC* at 6, ¶¶ 24–29.)  As a result, the motion to dismiss Mr. Bernal's Bane Act claim will be denied.

## H.   THE *MONELL* CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED

Mr. Bernal has asserted two *Monell* claims against the unidentified individual DOE defendants.  Defendants assert that *Monell* claims brought against individual defendants are improper.  (*Mtn.* at 7:20–25.)  "A *Monell* claim is, by definition, one brought against a public entity alone."  *Hernandez v. San Bernadino County*, 2023 WL 3432206, at *5 (C.D. Cal. January 26, 2023) (*citing Monell*, 436 U.S. at 689 n. 55); *see also Spriggs v. City of San Diego*, No. 24-CV-01006-W-KSC, 2024 WL 4469218, at *7 (S.D. Cal. Oct.

9, 2024).  Accordingly, the *Monell* claims against the DOE defendants will be dismissed without leave to amend.

## I.    CONSTITUTIONAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

Defendants also move to dismiss the DOE defendants from the suit asserting that Mr. Bernal has failed to allege they are individually liable.  (*Mtn.* at 23:3–4.)  Indeed, district courts have dismissed claims against DOE defendants where a plaintiff has failed to adequately plead facts to show that the individual defendants personally violated their constitutional rights.  *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).  The Court disagrees as to Mr. Bernal's Eighth Amendment claim for inadequate medical care but agrees for the rest of the constitutional claims.

The FAC alleges that "[d]ays after the Subject Incident, DOES 1–20 refused to allow Plaintiff to get his finger treated by the infirmary every day, like he was supposed to.  They also refused to give Plaintiff any other medical documents or updates regarding Plaintiff's medical condition or the needed care for his fingers."  (FAC at 6, ¶ 25.)  Mr. Bernal has stated a claim against the DOE defendants 1–20 as he is asserting that they specifically refused him the ability to go to the infirmary.

However—as explained above—Mr. Bernal has failed to state constitutional claims under the Fourth and Fourteenth Amendment.  Therefore, those claims against the DOE defendants will be dismissed.

## IV.   CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss the FAC.  The FAC is dismissed as follows:

- All claims are dismissed against Sheriff Kelly Martinez **WITHOUT LEAVE TO AMEND**;

- The Intentional Infliction of Emotional Distress Claim (Claim VI) is **DISMISSED** against all defendants **WITHOUT LEAVE TO AMEND**.

- The Battery Claim (Claim VII) is **DISIMISSED WITH LEAVE TO AMEND**.

- Mr. Bernal's direct claims against the County (Claims I–III) are **DISMISSED WITHOUT LEAVE TO AMEND**;

- Mr. Bernal's *Monell* claims against the County are dismissed as follows:
  - Fourth Amendment claim is **DISMISSED WITH LEAVE TO AMEND**;
  - Eighth Amendment claim is **DISMISSED WITH LEAVE TO AMEND**;
  - Fourteenth Amendment claim is **DISMISSED WITH LEAVE TO AMEND**.

- The motion to dismiss as to the Eighth Amendment inadequate medical care claim against the DOE defendants and the Bane Act claim is **DENIED**.  Otherwise, the claims against the DOE defendants are **DISMISSED**.  The claims are dismissed against the DOE defendants as follows:
  - Fourth Amendment claim **DISMISSED WITH LEAVE TO AMEND**;
  - Eighth Amendment claim is **DISMISSED WITH LEAVE TO AMEND**;
  - Fourteenth Amendment claim is **DISMISSED WITH LEAVE TO AMEND**.

Additionally, the Court grants Defendants' request and **DISMISSES** Mr. Bernal's request for punitive damages from the County and **STRIKES** all references to "Keith's death" in the FAC.

**IT IS SO ORDERED.**

Dated:  April 25, 2025

_____
Hon. Thomas J. Whelan
United States District Judge